IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER FLORES | § | |
| v. | § | CIVIL ACTION NO. 6:21cv145 |
| JENNIFER SANDERS, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Christopher Flores, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The Defendants remaining in the case are TDCJ officials Richard Babcock, Jennifer Sanders, Susan Cunningham, and Lourens Jackson; a fifth Defendant, former TDCJ official Shayna McArthur, has previously been dismissed from the case.

**I. The Plaintiff's Complaint**

In his original complaint, Plaintiff stated that on September 25, 2020, Warden Babcock ordered Officer Lourens Jackson to lock Plaintiff up for an investigation. Because of this order, TDCJ Administrative Directive 03.72, security memorandums, and post orders all mandated that Plaintiff's personal property be confiscated and inventoried. Plaintiff asserts that Warden Babcock intentionally and in bad faith misclassified him as a mental health patient and had him involuntarily committed to a mental hospital, the TDCJ Mental Health Therapeutic Diversion Program, without any type of hearing for 54 days.

That same day, Plaintiff contends that Warden Babcock ordered Officer Jackson to house Plaintiff in a "filthy, dilapidated, roach- and vermin-infested cell, wearing no clothing, with no mattress, sheets, blanket, towel, basic elements of hygiene or cleaning supplies whatsoever." He says that from September 25 until November 17, 2020, Warden Babcock intentionally left him in "subhuman conditions of confinement, denying plaintiff the minimal civilized measure of life's necessities, thereby exposing him to a substantial risk of serious harm, despite repeated verbal and written complaints, grievances, I-60's and phone calls from plaintiff's family, in violation of plaintiff's well-established Eighth Amendment right not to be subjected to callous and deliberate indifference."

On October 2, 2020, Plaintiff states that Officer Susan Cunningham, acting in bad faith and with evil intent, outside of her lawful authority, enforced TDCJ Administrative Directive 03.72 against him in an arbitrary and capricious manner so as to deprive him of his personal property. He contends that she subjected him to punishment, without prior notice or fair warning, that he could not possess commissary for more than 60 days, in violation of his right not to be punished for an act which he could not have known was prohibited.

On October 8, 2020, Plaintiff contends that Jennifer Sanders, Chief of Unit Classification, officially committed him to a mental hospital, the TDCJ Mental Health Therapeutic Diversion Program, without a hearing. She also left him in "subhuman conditions of confinement" from October 8, 2020 until November 17, 2020, as part of a conspiracy with Warden Babcock. For relief, Plaintiff states he is seeking unspecified declaratory and injunctive relief, as well as nominal and punitive damages.

Plaintiff filed an amended complaint dated August 16, 2021 (docket no. 34). This amended complaint added additional claims against former officer Shayna McArthur and also refers to an unknown individual who made a false entry on a Form I-47MI, apparently indicating that a disciplinary hearing occurred when in fact no hearing was ever held. The claims raised in the

2

amended complaint against the Defendants Babcock, Jackson, Cunningham and Sanders are unchanged from the original complaint.

## II. The Motion for Summary Judgment

The Defendants Babcock, Jackson, Cunningham and Sanders have filed a motion for summary judgment based upon exhaustion of administrative remedies. They argue that between September 1, 2020 and January 31, 2021, Plaintiff filed 11 Step One grievances, but only one Step Twp appeal concerned his placement in a mental health program; however, this claim was not raised in the original Step One grievance, filed on October 2, 2020. This Step Two appeal was not returned to Plaintiff until two days after he signed his original petition. Thus, the Defendants argue Plaintiff did not exhaust his administrative remedies prior to filing suit. Plaintiff has filed a response arguing that he did exhaust his administrative remedies.

## III. The Summary Judgment Evidence

### A. The Defendants' Evidence

The Defendants attach a copy of Plaintiff's grievance file from August 1, 2020, to January 31, 2021. A number of these grievances, all of which are found in docket no. 77-2, do not relate to the claims raised in the complaint. However, two of Plaintiff's processed grievances in the Defendants' summary judgment evidence do allude to the incidents forming the basis of his claim. In grievance no. 2021013960, signed on October 2, 2020, Plaintiff complains that "on September 25, 2020, I was locked up and placed in PHD [pre-hearing detention] in 12 Building, C Pod, 61 cell. As of yet, I still have not been given a disciplinary hearing." He quotes TDCJ regulations saying that if an offender is placed in pre-hearing detention and has not had a disciplinary hearing within 10 days, he shall be released from pre-hearing detention or immediately provided with a hearing under Section II of the Restrictive Housing Plan. Plaintiff states that Sunday, October 4, 2020, is the 10th day, and asks that he be released or given a hearing on Friday, October 2, the last working day prior to the scheduled review date. The response to this grievance, dated December 7, 2020, states that according to unit classification, Plaintiff was placed in the "overflow transient area"

3

pending an investigation, and that he has now been moved to general population, resolving his issue. No further action is warranted.

In his Step Two appeal of this grievance, Plaintiff states that the Step One response is "deceptive and misleading" because he was not placed in an overflow transient area but in administrative segregation. He also says that he was not placed in pre-hearing detention, but instead was illegally placed in the Mental Health Therapeutic Diversion Program, in violation of the Correctional Managed Health Care Policy Manual. He was housed out of his assigned custody designation for 54 days, in violation of the TDCJ Classification Plan and Section 501.112(b) of the Texas Government Code. Plaintiff says that the grievance response is also misleading because it says that he has been put in general population, when in fact he was moved to "the warden's new punishment pod" on 7 Building, where one cannot have a job other than the "punitive work squad (field force) and cannot be moved anywhere else on the unit.

Plaintiff contends that he has lived primarily in the dorm since 2016 and worked since 2013, he is a minimum custody inmate, and until recently, he has not had a single disciplinary case in almost seven years, no sexual misconduct cases, no history of mental illness, no history of assaultive or aggressive cases, and no gang affiliation. He has received on-the-job training certificates at every job which offered them, but now he cannot have a job. He asks for an explanation of why he cannot have a job or be moved off the punishment pod, why this does not constitute "punishment," and whether he is being retaliated against because the investigation did not yield the desired result. The response to this grievance stated that the Step Two grievance has been investigated and Plaintiff was appropriately advised at Step One. There was no evidence of policy violation, and no further action is warranted. (Docket no. 77-2, p. 72).

The other grievance alluding to the claims is no. 2021038121 (docket no. 77-2, p. 95). In this grievance, signed on November 24, 2020, Plaintiff stated that on November 17, 2020, after being illegally classified as a mental patient and mishoused in administrative segregation for 54 days in unconstitutional conditions, he was released and moved to Warden Babcock's newly created

"punishment pod." In this pod, Plaintiff said that inmates are automatically removed from their previous job assignments and placed in the punitive work squad (field work). No other jobs are allowed and the inmates cannot be moved anywhere else on the unit, and they are housed with medium custody inmates. Plaintiff says that such pods are not unknown at TDCJ and normally house inmates who were caught or are suspected of rule violations such as possession of drugs or serious contraband such as cell phones. The pod held primarily black and Hispanic inmates, suggesting it was racially motivated, but he says it is also for inmates whom the administration believes have knowledge of improper behavior by other inmates.

Additionally, Plaintiff says that he has not had a disciplinary case in almost seven years and has lived primarily in the dorms while working in the major's office, in maintenance as an electrician, in the mechanical department, and in the law library. He states that he has received on-the-job training certificates at each job which offered them, he has no history of mental illness or assaultive behavior, and no history of gang affiliation or drug use. The response to this grievance states that "according to security staff you are appropriately housed. No action warranted."

In his Step Two appeal of this grievance, Plaintiff complained that the response to his Step One grievance is "vague and ambiguous boilerplate" because it says he is appropriately housed "according to security staff," but housing assignments are the responsibility of the warden and the chief of unit classification. He says that the Step One grievance response did not address any of the issues he raised, including the fact that when minimum custody inmates are moved to this punishment pod, they are automatically placed in the punitive work squad to do field work, and inmates cannot get a different job or be moved off of the punishment pod to anywhere else on the unit. He says that the majority of inmates moved to this pod are ones whom the administration believes committed some sort of serious rule violation, so the pod is being used to punish inmates outside and beyond what the TDCJ Disciplinary Rules and Procedures for Inmates allows, which is a violation of due process. The response to this grievance appeal says "only present one issue per grievance, as only one issue will be addressed per grievance. Your complaint has been reviewed.

5

The available evidence supports the conclusion of the Step 1 investigation. Your complaint was addressed and you were correctly advised at Step 1. No further action is warranted."

B. Plaintiff's Evidence

Plaintiff attaches copies of six Step One grievances to his original complaint. Each one of these was screened (*i.e.* returned unprocessed). Of these, grievance no.'s 2021014807, 2021016973, 2021025448, and 2021026113 were screened as redundant to other grievances, no. 2021029386 was screened for excessive attachments, and 2021036950 was screened because the grievable time period had expired. (Docket no. 1-1, pp. 2-13).

The attachments to Plaintiff's amended complaint include grievance no.'s 2021013960, 2021014807, 2021016973, 2021025448, 2021026113, 2021029386, 2021036950, and 2021031435, all of which are before the Court in the original complaint or the summary judgment evidence.

In his response to the motion for summary judgment based upon exhaustion, Plaintiff states that he filed grievance no. 2021013960 on October 2, 2020. He received it back on December 8, and on December 14, he filed his Step Two appeal. On January 13, 2021, Resolution Support Manager Jessica Riley notified him that an additional 40 days was needed to respond to this grievance. Plaintiff says this made the grievance due date March 4, 2021.

On March 22, 2021, Plaintiff filed grievance no. 2021085786, asking for the return of grievance no. 2021013960. He filed the Step Two appeal of grievance no. 2021085786 on May 10, 2021.

According to Plaintiff, the limitations period began to run on his claim on March 31, 2021, at which time he was authorized by statute to file suit despite not having received his grievance no 201013960 back. He delivered his lawsuit to prison officials for mailing on April 13, 2021. Two weeks later, on April 26, 2021, Plaintiff received back his Step Two appeal in grievance no. 2021013960, some 53 days past the deadline.

Plaintiff argues that the failure of prison administrators to respond to a grievance in a timely manner can result in the grievance being deemed exhausted. He states that because TDCJ failed to

timely respond to his grievance, he was entitled to file suit without having received his Step Two grievance back.

Plaintiff further argues that grievance no. 2021013960 alleged sufficient facts to exhaust his administrative remedies against Babcock and Sanders. He says that he is not required to name individual defendants and that placement in pre-hearing detention could be authorized only by the highest ranking official on duty, which was Babcock. Because he was improperly housed, he states that this required the Unit Classification Committee, meaning Sanders, to justify the decision and remedy the mishousing as soon as possible. Plaintiff notes that the grievance investigation worksheet and the Step One grievance response were both signed by Sanders. He acknowledged that his Step One grievance did not mention being misclassified as a mental health inmate by Babcock or being assigned to the mental health diversion program by Sanders because he did not yet know about these.

In addition, Plaintiff states that it is "common knowledge" that an inmate will be placed in pre-hearing detention, which is in 11 Building, when the inmate is suspected of having committed a serious rule violation. He maintains that Babcock and Sanders created the problem which formed the basis of his lawsuit and then turned a deaf ear to his complaints in his grievance responses.

Plaintiff also points to other grievances which he filed or tried to file between October 9 and November 23, 2020. He says that grievance no. 2021016973 complained that Jackson placed him in unconstitutional conditions, but this grievance was rejected as being redundant to grievance no. 2021013960 despite being completely different. He says he knew this was wrong, but TDCJ will not allow correction of a grievance rejected as redundant.

On October 20, 2020, after discovering he was assigned to the mental health diversion program, Plaintiff states that he filed a grievance against Babcock and Sanders. He says he sent one copy to the law library and gave the other copy of this grievance to the guard at breakfast to put in the grievance box. Plaintiff states that he saw the unit grievance investigator pick the grievance up from the box, but both copies of the grievance which he had turned in had disappeared.

On October 27, 2020, Plaintiff filed grievance no. 2021025448 complaining of being mishoused and of "numerous violations of state and federal law," but it was again rejected as duplicative of 2021013960 despite being completely different.

On November 2, 2020, Plaintiff states that he filed a grievance for violations of the TDCJ Restrictive Housing Plan, but says that this grievance disappeared as well.

Plaintiff states that grievance no. 2021029386 concerned his claim against Cunningham for taking his property. He states that he filed grievance no. 2021031435 against Price for impeding his ability to exhaust his administrative remedies. He says that he detailed Price's allegedly unlawful actions in the grievance and he noted that inmates can only exhaust available administrative remedies, but cannot force grievance officers to process properly filed grievances.

On November 16, 2020, Plaintiff states that he filed grievance no. 2021034425 detailing his unconstitutional living conditions, but it was rejected on November 17 as being in excess of one every 7 days. Plaintiff says this was improper because his previous grievance was picked up on November 9 and processed on November 10, eight days after his earlier one. In addition, this grievance was not returned to him so he was unable to resubmit it; he did not discover it until he found it in the Defendants' initial disclosure in April of 2022.

On November 23, six days after being released from the mental health diversion program, Plaintiff states that he filed grievance no. 2021036950 about a skin condition he had developed. This grievance was screened and rejected because "the grievable period had expired," but Plaintiff argues that the grievance was not untimely because he had only been out of the mental health diversion program for six days and had been seen by medical personnel for the first time on November 20. Plaintiff says that the medical personnel told him that the restrictive housing was so filthy that any number of things could have caused the skin condition. He says he should have 15 days to file a grievance so he does not know why it was untimely.

Plaintiff argues that according to the Supreme Court, a grievance system is considered "unavailable" when it operates as a dead end, it is so opaque that as a practical matter it is incapable

of use, and when prison administrators thwart inmates from taking advantage of the process through machination, misrepresentation, or intimidation. He claims that all three of these circumstances exist in his case, and that he therefore should be deemed to have exhausted his available administrative remedies.

Plaintiff attaches numerous exhibits to his response. As noted above, Step One grievance no. 2021013960 (docket no. 116-10, p. 2) complained that on September 25, 2020, Plaintiff was placed in pre-hearing detention on 12 Building, but had not yet received a disciplinary hearing (as of October 2). The response was dated December 7, 2020, and said that Plaintiff had been placed in overflow transient housing pending an investigation, and that he had now been moved back to general population.

The Step Two appeal of this grievance (docket no. 116-13, p. 2), complained that Plaintiff was not placed in an overflow transient area but in the mental health therapeutic diversion program and was mishoused out of his custody designation for 54 days. He also complained about being moved to "the warden's new punishment pod." The response stated that he had been appropriately advised at Step One.

Grievance no. 2021085786 (docket no. 116-14, p. 2) complains of overdue Step Two grievances. The response says that there was a delay in processing grievance no.'s 2021013960 and 2021031435, and that grievance no. 2021013960 was closed on April 25, 2021, and would be returned to Plaintiff as soon as the unit receives it from the central grievance office,

The Step Two appeal of this grievance complains that there is no reason not to process grievances in a timely manner and the responses to grievance no. 2021013960 were ridiculous. The response says that grievance no. 2021013960 was returned on April 26, 2021, and grievance no. 2021031435 was returned on June 3, 2021.

Grievance no. 2021016973, dated October 9, 2020 (docket no. 116-29, p. 2) complained that on September 25, 2020, Plaintiff was at work in the law library when officers Jackson and Sandel strip searched him and took him to 12 Building wearing only shoes and boxers. He was placed in

a trashed-out, roach-infested cell with no mattress or sheets or cleaning supplies, and all of his personal property was confiscated, including a medical pillow. He did not get a mattress or sheets for four days and still has not received his property after two weeks. This grievance was screened as redundant to grievance no. 2021013960.

Grievance no. 2021025448 (docket no. 116-31, p. 2), dated October 27, 2020, complained that despite sending multiple I-60 inmate request forms to Wardens Babcock, Meador, and Collum, Chief of Classification Sanders, the Inmate Records Department, and the Office of the Inspector General, Plaintiff is now on his 32nd straight day of being mishoused in administrative segregation despite being a G2 / S3 minimum custody inmate. He says that there are plenty of beds in his assigned custody designation and so he is being subjected to mistreatment and punishment of violation of the TDCJ Disciplinary Rules and Procedures for Offenders. There is no mention of placement in the Mental Health Therapeutic Diversion Program. This grievance was screened as redundant to grievance no. 2021013960.

Grievance no. 2021026113, signed on October 28, 2020 (docket no. 117. p. 2), complains that Plaintiff is on his 34th straight day of being mishoused in administrative segregation as a G2 / S3 minimum custody inmate in violation of the TDCJ Classification Plan and Restrictive Housing Plan, as well as the Texas Government Code.  He again says that there are plenty of available beds in his assigned custody designation. This grievance was screened as redundant to grievance no. 2021009997.

Grievance no. 2021029386, signed on November 4, 2020 (docket no. 117-2, p. 2) is an appeal of a disciplinary case for possession of contraband. The grievance was screened because the grievable time period had expired and there were excessive attachments to the grievance.

Grievance no. 2021034425, signed on November 16, 2020 (docket no. 117-3, p. 2) complains of the conditions of confinement and being mishoused outside of his classification level. The grievance was screened as a submission in excess of one every seven days.

Grievance no. 2021036950, signed on November 23, 2020 (docket no. 117-4, p. 2), complains that he was finally seen by medical personnel after being placed in a filthy cell on September 25, 2020. He states that he had been escorted to this cell by Officers Jackson and Sandel, and when the door was opened, Jackson looked in the cell and then grabbed a broom and swept out a mound of trash. Plaintiff was then put in the cell and saw how filthy it was, including fecal matter and vermin. He got a mattress four days later and toilet paper a week later. This grievance was screened because the grievable time period had expired.

Grievance no. 2021031435, signed on November 9, 2020 (docket no. 117-5, p. 2), complains that grievance officer Margaret Price interferes with and impedes his ability to exhaust his administrative remedies. He says that he was mishoused in administrative segregation, meaning that he has to rely on the unit grievance investigators to collect the grievances, but the investigators do not consistently collect the grievances. He has asked Price repeatedly about various grievances but she does not respond. He complains about grievances no. 2021016973 and 2021025448 being rejected as redundant when they were not similar, and says that he cannot force the grievance investigators to process grievances, but he is only required to exhaust "available" administrative remedies. The response to this grievance states that only one issue per grievance will be addressed and that the grievance staff states that grievances are picked up every day from 12 Building. Without evidence or witnesses to corroborate the claim, no further action is warranted.

In his Step Two appeal of this grievance (docket no. 117-6, p. 2), Plaintiff states that it is false to say his grievances are presenting more than one issue because he is describing a conditions of confinement claim, the law library staff can corroborate his claims, and the surveillance video is never reviewed when it can help an inmate. The response to this grievance appeal states that there is insufficient evidence to support his allegations and grievances are collected and processed according to policy. All conduct will continue to be monitored and corrective action will be taken if any staff misconduct is confirmed.

After a statement saying that he has personally witnessed grievance officers throw grievances in the trash (docket no. 117-2, p. 2), Plaintiff offers grievance no. 2021009997, signed September 22, 2020 (docket no. 117-8, p. 2), complaining that the unit had been placed on lockdown, and he tried to mail a letter to his family but no one came to pick up the mail. He also indicates that grievances are not picked up. The response states that night shift security staff has been tasked with picking up outgoing mail, and grievances are picked up daily by the grievance office staff.

Plaintiff next presents a statement (docket no. 117-9, p. 2) saying that he has often worked in close proximity to prison administrators and has been ordered to destroy documents sent by inmates to prison officials, followed by a statement (docket no. 117-10, p. 2) saying that he would make multiple copies of grievances because he knew that they were not routinely collected. He states that he would send one copy to the mailroom by truck mail, one copy in his indigent supply envelope to the law library, and give one copy to the guard to put in the grievance box in the dayroom.

Plaintiff also attaches statements saying that he filed grievances on October 20, November 9, and November 16, 2020, and he saw these grievances being picked up (docket no.'s 117-12, 117-21, and 117-27). He believes the grievances he filed on October 20 and November 9 were destroyed, while the November 16 grievance was screened and rejected, but never returned to him.

Plaintiff attaches purported copies of I-60 request forms he sent to Price on October 19 and 30, 2020, stating that he received back grievances which were unprocessed for allegedly being redundant, but they were not redundant (docket no.'s 117-51 and 117-52). He also attaches purported copies of I-60's to Price complaining of grievances not being picked up (docket no.'s 117-53 and 117-54).

Plaintiff also furnishes numerous other letters and request forms to various officials complaining about being placed in segregation, the conditions of his cell, and the processing of his grievances. On May 17, 2021, Plaintiff sent a letter to the counsel substitute administrator (docket no. 117-72) complaining that he was denied the right to attend a disciplinary hearing for alleged

12

possession of contraband in October of 2020 and never received a copy of the Form I-47MI (the result of the hearing), so he had to order a copy of it through Open Records.  He stated that he was prevented from appealing the case because he filed grievances with original commissary receipts attached to establish ownership.  Plaintiff also contended that the I-47 was filled out to make it look like he attended the hearing when he did not, and there is a second set of handwriting on the form indicating that someone falsified it to make the hearing look legitimate.

## IV. Discussion

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. *Johnson*, 385 F.3d at 515. This means that in order for prisoners of the Texas Department of Criminal Justice - Correctional Institutions Division to exhaust an issue properly, the issue must be presented in a Step One grievance and then appealed to Step Two.  New issues cannot be raised for the first time in a Step Two grievance appeal and only one issue per grievance may be presented. *Randle v. Woods*, 299 F.App'x 466, 2008 U.S. App. LEXIS 24138, 2008 WL 4933754 (5th Cir., November 19, 2008), *citing Woodford*, 548 U.S. at 92- 93 *and Johnson*,

385 F.3d at 515; *see also* TDCJ Offender Orientation Handbook, February 2017, p. 74 (inmates may present only one issue per grievance) (available online at https://www.tdcj.texas.gov/documents /Offender_Orientation_Handbook_English.pdf). Furthermore, the district court may not excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account. *Ross v. Blake*, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016).

The Fifth Circuit has stated that the exhaustion requirement must be interpreted in light of its purposes, which include the goal of giving prison officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516, *citing Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Thus, a grievance is considered sufficient to the extent it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson*, 385 F.3d at 517.

The statute requires prisoners to exhaust "available" administrative remedies, and the Supreme Court has identified three circumstances under which administrative remedies are considered "unavailable." *Ross*, 578 U.S. at 643. The first of these is where the administrative remedy procedure operates as a simple dead end, with officials unable or consistently unwilling to provide any relief. The Court gave as an example where a prison handbook directed inmates to submit their grievances to a particular administrative office, but in practice that office disclaimed any capacity to consider those petitions, or if administrative officials have apparent authority, but decline ever to exercise it.

The second circumstance is where an administrative scheme is so opaque that it becomes, practically speaking, incapable of use; in other words, a mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.

The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.

Plaintiff's complaint against the Defendants consists of three claims. These are: (1) Babcock and Sanders had him committed involuntarily as a mental health patient without any type of hearing; (2) Babcock, Sanders, and Jackson had him confined in a "filthy, unsanitary, dilapidated, roach-and-vermin infested cell, wearing no clothing, with no mattress, sheets, blankets, towel, basic elements of hygiene, or cleaning supplies whatsoever"; and (3) Cunningham wrongfully deprived him of his personal property and did not allow him to possess commissary items for over 60 days without due process.

The only filed grievance in which Plaintiff raised his claim of improper placement in the Mental Health Therapeutic Diversion Program was Step Two grievance appeal no. 2021013960. While he alluded to placement in the program in grievance no. 2021038121, the gravamen of this grievance concerned his placement on the "punishment pod."

The allegations in the Step Two grievance appeal concerning placement in the Mental Health Therapeutic Diversion Program, housing out of his assignment custody designation for 54 days, and placement on a "punishment pod" do not serve to exhaust Plaintiff's administrative remedies on these claims because they were improperly raised for the first time in a Step Two grievance appeal. *Randle*, 299 F.App'x at 467; *Bangmon v. Alexander*, slip op. no. 18-41043, 2021 U.S. App. LEXIS 23383, 2021 WL 3477490 (5th Cir., August 6, 2021). Plaintiff's claim that he did not receive a hearing appears in his Step One grievance but not the Step Two appeal, so this also does not serve to exhaust administrative remedies. *Johnson*, 385 F.3d at 515; *see also Weatherly v . Davis*, civil action no. 6:20cv54, 2021 U.S. Dist. LEXIS 203174, 2021 WL 4896877 (S.D.Tex., August 13, 2021), *Report adopted at* 2021 U.S. Dist. LEXIS 202035, 2021 WL 4895726 (S.D.Tex., October 19, 2021) (raising a claim in a Step One grievance but not the Step Two appeal does not exhaust that claim).

However, Plaintiff also claims that he filed numerous grievances to which he never received a response, attaching purported copies at docket no.'s 116-30; 117-1; 117-65, p. 5; and 117-65, p. 7. The grievance form found at docket no. 116-30, dated October 20, 2020, complained of

Plaintiff's placement in the Mental Health Therapeutic Diversion Program. Plaintiff attaches a sworn statement (docket no. 117-12) saying that on October 20, 2020, he saw the unit grievance investigator and a correctional officer pick up the grievance which he had the guard put in the grievance box at breakfast.

In *Cantwell v. Sterling*, 788 F.3d 507, 509 and n.1 (5th Cir. 2015), a TDCJ prisoner complained of deliberate indifference to his serious medical needs, and the defendants moved for summary judgment based upon failure to exhaust administrative remedies. The prisoner argued that he filed a Step One grievance but never received a response, and thus never proceeded to the second step in the grievance procedure. The district court granted the motion for summary judgment, determining that the prisoner's claim was "nothing more than a conclusory or unsupported assertion," but the Fifth Circuit reversed, stating that "the ordinary rules of civil procedure are applicable in prisoner suits. Cantwell offered his testimony under penalty of perjury and declared it to be true and correct, so it must be credited on summary judgment. *See Leggett v. Lafayette*, No. 14–10247, 608 F.App'x 187, 189–90, 2015 WL 1609145, at *2 (5th Cir. Apr. 10, 2015) (unpublished) (*citing Ion v. Chevron USA, Inc.*, 731 F.3d 379, 382 n. 2 (5th Cir. 2013))."

The Fifth Circuit went on to cite *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015), in which the prisoner contended that the prison's failure to respond to his initial grievance excused him from further steps in the process. The court there stated that under some circumstances, a prison's failure to respond to a grievance can result in the administrative remedies being deemed exhausted. Those relevant circumstances are the requirements of the prison's grievance procedure. In *Wilson*, the grievance procedure stated that if a prisoner does not receive a response to his grievance, the prisoner is "entitled" - and therefore, to exhaust, must - "move on to the next step in the process." By contrast, in *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1988), *overruled on other grounds as stated in Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012), the Fifth Circuit held that when a prison's grievance procedures prescribe deadlines by which the authorities must respond to grievances and do not set out any additional steps that prisoners must take upon the time elapsing, then prisoners

in such circumstances have exhausted the available grievance procedures. *Underwood*, 151 F.3d at 295.

Although the TDCJ Offender Orientation Handbook was online, the Fifth Circuit stated that this was the 2015 edition, and the events in the lawsuit had taken place years earlier; thus, there was no evidence of whether the procedures were the same during the relevant time. The Fifth Circuit said that "in short, the defendants have not put before the district court or this court the applicable grievance procedures (and we stress applicable - the ones in force at the relevant time, in the relevant place.)"

Without knowing what the applicable grievance procedures say, the Fifth Circuit concluded that it was impossible to determine whether Cantwell had exhausted them. The defendants had the burden to establish that there were available procedures which Cantwell did not exhaust, and the district court erred in not holding the defendants to it.

In the present case, the Defendants link to the TDCJ Offender Orientation Handbook and also refer to the TDCJ Grievance Procedures for Inmates. The Offender Orientation Handbook, which is available on the TDCJ website at https://tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf, has a section on the grievance procedures, but does not explain what actions an inmate should take if he receives no response and his grievance is never returned. The TDCJ Offender Grievance Operations Manual, available on-line at https://www.law.umich.edu/special/policyclearinghouse/Documents/TX%20Offender%20Grievance%20Manual.pdf, is dated January of 2012, several years prior to the events in the lawsuit, and so it is not clear that the policies and procedures set out in the manual were the same as those in effect at the time of the incident; in any event, the 2012 manual does not explain what steps an inmate may take if his grievance is never returned to him, although it does specify that a Step Two grievance appeal must be accompanied by the original, answered Step One grievance. While Plaintiff includes excerpts from the TDCJ Offender Grievance Operations Manual in his summary judgment evidence, these excerpts likewise

do not advise inmates what actions they may take if they receive no response and their Step One grievance is never returned.

The Fifth Circuit has long held that conclusory assertions of exhaustion are insufficient to overcome a properly supported motion for summary judgment. *See, e.g.*, *Huff v. Neal*, 555 F.App'x 289, 2014 U.S. App. LEXIS 1535, 2014 WL 274500 (5th Cir., January 27, 2014) (unsupported allegations of exhaustion are insufficient to defeat a motion for summary judgment because "conclusory allegations supported by conclusory affidavits are insufficient to require a trial,") citing *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Cir. 1986); *see also Kidd v. Livingston*, 463 F.App'x 311, 2012 U.S. App. LEXIS 3970, 2012 WL 614372 (5th Cir., February 28, 2012) ("conclusory assertions and production of an unprocessed Step Two form in the district court failed to create a genuine dispute as to his exhaustion of this grievance,") *citing Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004); *Ryan v. Phillips*, 558 F.App'x 477, 2014 U.S. App. LEXIS 5087, 2014 WL 1017117 (5th Cir., March 18, 2014) ("conclusory and unsubstantiated assertion that he initiated the applicable grievance procedure is insufficient to refute the lack of evidence that he filed any formal or informal grievances,") *citing Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). These holdings comport with the long-standing principle that a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Powers v. Northside Independent School District*, 951 F.3d 298, 307 (5th Cir. 2020).[1]

---

[1]Otherwise, a prisoner could defeat the exhaustion requirement by the simple expedient of filing conclusory declarations claiming exhaustion without support in the record, or asserting that prison officials refused to process his grievances. *West v. Polk*, civil action no. 5:19cv74, 2022 U.S. Dist. LEXIS 176063, 2022 WL 7376199 (E.D.Tex., May 18, 2022), *Report adopted at* 2022 U.S. Dist. LEXIS 175055, 2022 WL 4486970 (E.D.Tex., September 27, 2022), *citing Wall v. Black*, civil action no. 5:08cv274, 2009 U.S. Dist. LEXIS 90193, 2009 WL 3215344 (S.D.Miss., September 30, 2009) (prisoner's claim that prison officials denied him grievance forms does not automatically defeat summary judgment on the issue of exhaustion; instead, the prisoner must present sufficiently specific facts and not bald, conclusory assertions).

In the present case, however, Plaintiff has not merely submitted conclusory allegations of exhaustion. Instead, the record shows that as in *Cantwell*, Plaintiff has presented competent summary judgment evidence, including a sworn affidavit and a copy of the unprocessed grievance, demonstrating that he submitted a grievance concerning his placement in the Mental Health Therapeutic Diversion Program, and this grievance was picked up by a grievance officer, but no response was ever received. Plaintiff also furnished summary judgment evidence showing that he filed grievances complaining about the failure to process his grievances and that he submitted multiple copies of his grievances to the grievance box, the law library, and by truck mail.

There is no evidence in the record showing what steps - if any - inmates have available when they submit Step One grievances but receive no response. Consequently, the Defendants have failed to carry their burden of showing that Plaintiff failed to exhaust the grievance procedures which were available to him with regard to his placement in the Mental Health Therapeutic Diversion Program.

Plaintiff also complained of being placed in an unsanitary cell and left there for an extended period of time. Grievance no. 2021016973 (docket no. 116-29) complains of the conditions of his cell, but this grievance was rejected by grievance investigator M. Price as redundant to grievance no. 2021013960. The two grievances read, in their entirety, as follows:

**Grievance no. 2021016973**:

On 9/25/20, I was assigned housing on 19 Dorm, X pod, 59 bunk. While at work in the law library, CO Jackson (K-9) and Lt. Sandel showed up, strip searched me, then escorted me to 12 Building, administrative segregation, wearing only shoes and boxers. The only explanation I was given was that I must have pissed somebody off. I was placed in a trashed out, roach infested cell with no mattress, sheets, soap, toilet paper, or cleaning supplies. All of my personal property was confiscated, yet I was given no Prop-05 or Prop-08, detailing what was taken or why?

Among the confiscated items was my medical pillow, issued by Dr. Shrode, to alleviate my vertigo symptoms. This withholding constitutes interference with prescribed medical treatment and calloused and deliberate indifference towards my legitimate medical needs. I did not receive a mattress and sheets for 4 days. And 7 days after that I received my first roll of toilet paper and some soap. I have been spending most of my days and nights killing roaches and chasing away rats that enter the cell through the bottom of the door each night. I am filthy, sleep deprived, and dizzy. I have been on transient status now for two weeks and still have not received my property, in violation of AD-04.63, III.D., which states 'transient offenders shall be allowed to retain personal property in accordance with the assigned custody

designation as outlined in AD-03.72, Offender Property.' Unit Property Officer Lisa Garrett is deliberately withholding my personal property, in violation of established procedures.

I am a G2, S3 minimum custody inmate mishoused in Ad Seg, in violation of Section 501.112 of the Texas Government Code, TDCJ Classification Plan, AD-04.63, and Restrictive Housing Plan. There is no justification to deliberately mishouse me in transient status when there are numerous open bunks in the general population right now, including the bunk that I used to live in on 19 Dorm. AD-04.63, II.A, states 'if appropriate housing for the offender becomes available in less than 30 calendar days, the offender shall be assigned accordingly.'

The sleep deprivation I am being subjected to, coupled with the unconstitutional living conditions I am living in, violate the Eight Amendment's proscription of cruel and unusual punishment and wanton and unnecessary infliction of pain. If prison officials choose to mishouse me, in violation of TDCJ policy, and disregard the unnecessary risk to my health and safety, it will demonstrate a culpable state of mind and conscious disregard for the laws of the United States and Texas.

**Grievance No. 2021013960:**

On 9/25/20, I was locked up and placed in PHD in 12 Building, C-Pod, 61 cell. As of yet, I still have not been given a disciplinary hearing.

TDCJ Disciplinary Rules and Procedures for Offenders
II. Pre-Hearing Detention
B. Time Limits

TDCJ Restrictive Housing Plan
II. Placement Procedures
D. Pre-Hearing Detention

If the offender has not had a disciplinary hearing within 10 days, the offender shall be released from pre-hearing detention or immediately provided with a hearing pursuant to Section II of the Restrictive Housing Plan.

TDCJ Restrictive Housing Plan
II. Review Procedures after initial placement

All required reviews may be conducted earlier than the scheduled time frame to be held with other planned reviews. All scheduled review dates that fall on a weekend or holiday should be conducted no later than the last working day prior to the scheduled review date.

Sunday, 10/4/20, is the 10th day. Please either release me or give me a hearing on Friday, 10/02/20, which is the last working day prior to the scheduled review date.

It is difficult to see how grievance no. 2021016973, which primarily complains of the conditions of Plaintiff's cell, is redundant to grievance no. 2021013960, which complains of being locked up without a hearing and which makes no mention of cell conditions. Even though both

20

grievances refer to being placed in segregation on September 25, 2020, they nonetheless appear to focus on considerably different elements.

Plaintiff argues that the rejection of grievance no. 2021016973 as redundant when in fact it was not amounts to thwarting him from taking advantage of the grievance process through machination, misrepresentation, or intimidation. *See Ross*, 578 U.S. at 644. In the absence of any evidence or explanation as to why these two ostensibly dissimilar grievances are redundant, the Defendants have not carried their burden of showing that Plaintiff failed to exhaust his administrative remedies. *See Cantwell*, 788 F.3d at 509.

In addition, grievance no. 2021034425, signed by Plaintiff on November 16 and stamped as received on November 17, 2020, complains that Plaintiff continues to be housed in a roach-infested cell where the water is foul-smelling and brown, the light fixture works sporadically, there is mold on the floor and paint peeling from the wall, the ceiling and back wall leak when it rains, the air conditioner is still blowing in November, rats run in and out of the cell, there are spiders and ants, he has numerous bug bites on his body which itch constantly, and he is housed with mentally ill patients who scream, yell, beat on the doors, short out the power, flood the cells, throw urine and feces, and light fires, resulting in loss of sleep and peace of mind. This grievance was rejected as being in excess of one every 7 days.

Plaintiff contends that the grievance before this one, no. 2021031435, was received by the grievance office on November 10 (docket no. 117-5, p. 2). Counting November 10 as the first day, Plaintiff asserts that grievance no. 2021034425 was received by the grievance office on November 17, which is eight days later. However, he complains that the rules are not clear as to whether the day the grievance is received counts as part of the seven-day period, rendering the process "opaque." *Ross*, 578 U.S. at 644. The rules which appear in the summary judgment evidence do not address this question; however, the Court need not consider this particular issue at this time because the Defendants have not carried their burden on exhaustion with regard to this claim as set out above.

The final matter to consider is Plaintiff's claim concerning the taking of his property. In his response to the motion for summary judgment, he identifies grievance no. 2021029386 as the grievance he filed against Cunningham for "arbitrarily and capriciously enforcing TDCJ Administrative Directive 03.72 against him, to deprive him of his protected property interest, and to punish him for acts which he could not have known were prohibited." This grievance was returned unprocessed for having excessive attachments. On December 9, Plaintiff states that he received an I-60 response from Price saying he could remove the attachments and resubmit the grievance, but when he did, it was rejected as untimely.

However, grievance no. 2021029386 specifically calls itself a "disciplinary appeal" (docket no. 117-2). The grievance complains that Plaintiff was denied the opportunity to attend his disciplinary hearing, he did not receive a timely disciplinary hearing, the offense description does not contain the required elements to support a Code 16 rule violation, there was insufficient evidence to sustain a finding of guilt, and the hearing record was incomplete. This grievance - challenging a disciplinary case - would not reasonably put prison officials on notice of Plaintiff's complaint concerning the taking of his property. Likewise, grievance no. 2021016973 complains about the living conditions in Plaintiff's cell, and while he mentions the taking of his property in that grievance - saying that it was being held by Officer Lisa Garrett, rather than Cunningham - TDCJ rules limit Plaintiff to one issue per grievance. A review of the summary judgment evidence does not show that Plaintiff has exhausted his administrative remedies against Defendant Cunningham, and her motion for summary judgment on the issue of exhaustion should be granted.

<u>RECOMMENDATION</u>

It is accordingly recommended that the Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (docket no. 77) be granted as to the Plaintiff's claim against Defendant Cunningham for the allegedly improper taking of his property, and that Defendant

Cunningham be dismissed as a party to this lawsuit. It is further recommended that the Defendants' motion for summary judgment on the issue of exhaustion be denied in all other respects.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 10th day of January, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

23